IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARLENE LAMBRIGHT,** | : | |
| | : | Case No. 2:12-CV-00594 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| **KIDNEY SERVICES OF OHIO,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on the Parties' cross-motions for summary judgment.  Pro se Plaintiff Marlene Lambright brings this action for alleged employment discrimination on the bases of race, gender, and disability, arising from her application for employment with Defendants Kidney Services of Ohio, Inc., and Thrift Stores of Ohio, Inc.  Defendants move the Court for summary judgment in their favor on all counts.  (Doc. 41).  Plaintiff requests the same in her favor.  (Doc. 42).  For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (Doc. 42) is **DENIED**.  This case is hereby **DISMISSED**.

### II. PROCEDURAL POSTURE

Plaintiff filed this action on July 26, 2012 (Doc. 3), having been granted leave to proceed *in forma pauperis* (Doc. 1).  Defendants answered, and, on August 23, moved to dismiss Plaintiff's age discrimination claim on account of her failure to exhaust administrative remedies. (Doc. 10).  On September 11, 2012, Plaintiff filed an Amended Complaint styled as "Plaintiff Restates Claim and Complaint."  (Doc. 14).  In light of this Amended Complaint, which no

longer asserted a claim for age discrimination, the Court denied Defendants' Motion as moot. (Doc. 20).

On June 28, 2013, after the close of discovery, Defendants timely filed their Motion for Summary Judgment (Doc. 41); on July 1, Plaintiff filed her Motion for Summary Judgment (Doc. 42). Both Parties filed Response briefs (Doc. 44, 45), and Defendants filed a reply brief in support of their Motion (Doc. 46). On August 30, Plaintiff filed a 37-page "Motions to Strike and Deny" Defendant's reply, which also remains pending before the Court.

### III. STATEMENT OF FACTS

Plaintiff brings her claim for workplace discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), (*Amended Complaint*, Doc. 14, ¶ I(A)), arising out of her application for employment with Defendants in late 2010. Ohio Thrift is a for-profit retailer of new and used products at locations throughout Central Ohio. (*Affidavit of Jennifer Alinkas*, Doc. 41-1, ¶ 4). Ohio Thrift obtains its merchandise through personal donations, non-profit organizations, and other sources, and offers discounted prices to the public. (*Id.*). Defendant Kidney Services is a related non-profit entity which employs "home solicitors," who work from home to solicit donations. (*Id.*, ¶ 5). In 2010-2012, Defendants also operated a call center that employed solicitors at this central location. (*Id.*, ¶ 6).

In early November 2010, Plaintiff responded to a posting on Craigslist, an online message board, advertising part-time, work-at-home employment with Defendant Ohio Thrift. (*Plaintiff's Deposition*, Doc. 40, at 112). She received a response to her email inquiry and communicated with Defendant's Human Resources department. (*Id.* at 113-114). In particular, Plaintiff asked whether Ohio Thrift "hired handicapped workers," and whether the work she was

2

applying for "c[ould] be done at home." (*Id.* at 114, 138). On November 5, 2010, Faye Tewell, General Manger of Home Solicitors with Ohio Thrift, responded affirmatively, and sent to Plaintiff an application packet to work as a home scheduler. (*Id.* at 115-16; *Affidavit of Faye Tewell*, Doc. 41-3, ¶ 3). Ms. Tewell later interviewed Plaintiff by phone, and hired her to work as a home solicitor. (*Plaintiff's Dep.* at 118, 120, 129-30; *Tewell Aff.*, ¶ 4). Plaintiff informed Ms. Tewell that she was also interested in the possibility of a call center job, instead of the home solicitor position. (*Plaintiff's Dep.* at 123).

Ms. Tewell advised Plaintiff that she would need to come in person to Defendants' offices to complete her Form I-9 identity verification before she could begin work. (*Id.* at 122, 128). Plaintiff explained that she used a walker, making it hard for her to travel to Ohio Thrift's West Broad Street office during regular hours. (*Id.* at 124, 138). Ms. Tewell suggested that Plaintiff go to Ohio Thrift's call center location to complete her I-9, which was at a more convenient location for Plaintiff. (*Id.* at 124-25, 132, 135). Ms. Tewell also informed Plaintiff that, while there, she could speak with Nichol Noeth regarding her interest in a call center job, and that Ms. Noeth could assist her with the I-9 verification. (*Id.* at 124-25, 132, 136-37). Ms. Tewell reminded Plaintiff that she should ask Ms. Noeth to fax the I-9 to Ms. Tewell after it was completed, if she opted for the home solicitor job rather than working at the call center. (*Email Chain between Lambright and Tewell, December 11, 2010*, Doc. 40-8).

On December 17, 2010, Plaintiff travelled to the Call Center location in order to complete her I-9. (*Plaintiff's Dep.* at 140-41). Plaintiff met with Ms. Noeth, and discussed her preference for working from home. (*Id.* at 141, 145). On this first trip, however, Plaintiff had forgotten her Social Security Card, so she could not complete her I-9. (*Id.* at 141, 143). Plaintiff returned within a few days with proper documentation. (*Id.* at 147). During her second visit, on

December 20, Plaintiff did not speak with Ms. Noeth; rather, she presented her documentation to the office assistant, Rachel Rausch, who made copies of Plaintiff's identification and took her completed Form I-9.  (*Id.* at 147-48; *Affidavit of Rachel Rausch*, Doc. 41-4, ¶ 3; *Lambright Form I-9*, Doc. 40-9).  Ms. Rausch then sent Plaintiff's Form I-9 to Ohio Thrift's Human Resources Department for payroll processing, which was standard procedure.  (*Rausch Aff.*, ¶ 4; *Alinkas Aff.*, ¶ 10).  She did not forward the documents either to Ms. Tewell or Ms. Noeth.  (*Rausch Aff.*, ¶ 5).  Plaintiff did not inform Ms. Rausch that the documents needed to be sent to Ms. Tewell (*Plaintiff's Dep.* at 148), and so, because Ms. Tewell worked from home, she never received Plaintiff's I-9 (*Tewell Aff.*, ¶ 8).

Defendants contend that, as a result of Ms. Tewell never receiving Plaintiff's paperwork, Plaintiff was never assigned work with Defendants.  (*Id.*).  According to Ms. Tewell, it was not uncommon for Ohio Thrift to offer a job to a prospective employee, only to have them fail to complete the Form I-9.  (*Id.*, ¶ 9).

After her trips to Defendants' offices, Plaintiff again contacted Ms. Tewell via email, to inform her that she had completed the paperwork, and to ask about her start date.  (*Plaintiff's Dep.* at 160).  Plaintiff told Ms. Tewell that she had given her documentation to Ms. Noeth, assuming that the office assistant who had helped her, Ms. Rausch, would forward it to Ms. Tewell.  (*Id.*).  Ms. Tewell thanked Plaintiff, and said that she would contact Ms. Noeth to follow up.  (*Id.* at 161; *Email Chain between Lambright and Tewell, December 21, 2010*, Doc. 40-10).

Plaintiff communicated with Ms. Tewell again on January 6, 2011, when she wrote to inquire if the position was still open.  (*Plaintiff's Dep.* at 162-64; *Email Chain between Lambright and Tewell, January 6, 2011*, Doc. 40-11).  Ms. Tewell answered that the position was available, and asked again for Plaintiff's completed application.  (*Id.*).  Plaintiff informed

4

Ms. Tewell that she "gave everything to Nicole [Noeth]," [sic], and Ms. Tewell thanked her for completing everything.  (*Id.*).

Plaintiff emailed for the final time roughly a week later, on January 13, 2011.  Plaintiff wrote to thank Ms. Tewell for her time, and said that "[a]lthough [she] was not hired," she intended to "refer[] some friends to apply."  (*Email Chain between Lambright and Tewell, January 13, 2011*, Doc. 40-11).  Plaintiff did not email again.  (*Plaintiff's Dep.* at 177-78).

On June 27, 2011, Plaintiff filed a charge of employment discrimination with the Ohio Civil Rights Commission ("OCRC"), alleging substantially the same facts as described above.  (*OCRC Charge*, Doc. 40-12).  On February 23, 2012, after its investigation, the OCRC issued its Letter of Determination, where it concluded that it could found "no information or records that would raise an inference that [Defendants] unlawfully discriminated against [Plaintiff] due to her race, Black, sex, female, and disability."  (*OCRC Letter of Determination*, Doc. 40-13).  The OCRC found specifically that Plaintiff was "inadvertently not placed on the work schedule due to paperwork issues and not due to her race, sex, or disability," and determined that there was no probable cause to issue a complaint against Defendants.  (*Id.*).

After Plaintiff filed her OCRC complaint, Defendants again offered Plaintiff a job as a home solicitor.  (*Alinkas Aff.*, ¶ 14; *Plaintiff's Dep.* at 209).  Plaintiff declined the offer.  (*Plaintiff's Dep.* at 209-10).  According to Plaintiff, she "felt like [she] wasn't really wanted," and that it "would have probably been a bad thing for me to file a complaint and then go work for a company."  (*Id.*).

Plaintiff filed suit on July 5, 2012, asserting claims for race, gender, and disability discrimination for failure to hire.  Plaintiff seeks $550,000.00 in compensatory and punitive damages, as well as costs and attorneys' fees.  (Doc. 3 at 3; Doc. 45 at 16).

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir. 1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986)). Summary judgment is inappropriate, however, "if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence

on which the jury could reasonably find for the opposing party.  *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995).

The standard of review for cross-motions for summary judgment "does not differ from the standard applied when a motion is filed by only one party to the litigation." *Sierra Brokerage Servs.*, 712 F.3d at 327.

### V. LAW AND ANALYSIS

In a race, gender, or disability discrimination case, a plaintiff may establish her case by direct or indirect evidence of discriminatory intent.  *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (plurality opinion).  For example, "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993)).  Direct evidence has been described as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006).  In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer, to prove, in a failure to hire case, that it would not have hired the employee even if it had not been motivated by impermissible discrimination. *See id.* (citing *Price Waterhouse*, 490 U.S. at 244-45; *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)).

In this case, Plaintiff insists that she has "direct evidence" that she is a member of a protected class, that she was qualified for the position sought, and that she did begin work with

Defendants.  (*Plaintiff's Response*, Doc. 45 at 2).  Plaintiff, however, does not present direct evidence *of discriminatory intent*.  Instead, she describes her interactions with Defendants' employees in generally positive terms, and concedes that no employees made any negative or inappropriate comments to her.  (*Plaintiff's Dep.* at 159-60, 188-89).  Plaintiff has not offered any evidence of an express statement of discriminatory intent, or discriminatory company policy, or indeed any evidence, "which, if believed, *requires* the conclusion that unlawful discrimination was . . . a motivating factor."  *Amini*, 440 F.3d at 359 (emphasis supplied).

In a case of indirect discrimination, then, a plaintiff must show by preponderance of the evidence a "*prima facie* case" of discrimination.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  After proving the existence of a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-3 (1973). If the defendant meets this burden, the plaintiff must then show that the defendant's articulated reason is a pretext for discrimination.  *Id.*  On a motion for summary judgment, the Court "considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).  In addition, it is important to note that Defendant's burden on the intermediate step is one of *production*; the "ultimate burden of persuading the trier of fact . . . remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

The burden of establishing a *prima facie* case of disparate treatment is not onerous; at this stage, a plaintiff merely must present evidence from which a reasonable jury could conclude that she suffered an adverse employment action "under circumstances which give rise to an inference of unlawful discrimination."  *Burdine*, 450 U.S. at 253 (1981); *see also Cline*, 206 F.3d at 661

(The court should "first determines if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met the *prima facie* requirements.").

In a failure to hire case, a plaintiff establishes a *prima facie* case of race discrimination by showing that: "(1) he is a member of a protected class; (2) he applied and was qualified for the position at issue; (3) he was considered and denied the position; and (4) other employees of similar qualifications who were not members of the protected class were offered the position." *Hubbard v. Int'l Paper Co.*, No. 2:08-CV-181, 2009 WL 5171825, at *5 (S.D. Ohio Dec. 21, 2009) (citing *Nguyen*, 229 F.3d at 562-63).

In an employment discrimination case under the ADA, a plaintiff must show that: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *but see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314-15 (6th Cir. 2012) (en banc) (removing requirement that the disability must be the "sole" reason for adverse employment action, and requiring only that it be a "but-for" cause).[1]

---

[1] As the Sixth Circuit has recognized, "[t]here has been some confusion in this circuit as to the proper test for establishing a *prima facie* case of employment discrimination under the ADA." *Whitfield*, 639 F.3d at 259. Most courts use the five-factor test described above, used notably in *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). Other courts use a three-factor test, requiring that a plaintiff show (1) that he or she is an individual with a disability; (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discharged because of the disability. *See, e.g.*, *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). This confusion was only deepened by the fact that the Sixth Circuit's *en banc* decision in *Lewis* explicitly overruled *Monette* with regard to the "sole cause" requirement, but did not discuss the five-factor *prima facie* case. *See Lewis*, 681 F.3d at 314. Since *Lewis*, some courts have reverted to the three-factor analysis, despite the court's clear directive in *Whitfield*. *See, e.g.*, *Henschel v. Clare Cnty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013). Other courts, recognizing that *Lewis* only abrogated *Monette* with respect to the "sole cause" standard, have maintained that the "*Monette* formulation" still governs. *See, e.g.*, *Zwiebel v. R.J. Corman R.R. Co./Material Sales*, 3:11-CV-00236, 2013 WL 444348, at *7 (N.D. Ohio Feb. 4, 2013). The Court here follows the imperative of *Whitfield* and the sound logic of *Zwiebel*, and employs the five-factor "*Monette* formulation," as modified by *Lewis*.

Once a plaintiff has established her *prima facie* case, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802-3. To accomplish this, the defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255. The explanation provided must be "legally sufficient to justify a judgment for the defendant." *Id.* Although the defendant "need not persuade the court that it was actually motivated by the proffered reasons," it must still raise "a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254; *see also Cline*, 206 F.3d at 666.

Finally, if Defendant succeeds in articulating a non-discriminatory basis for its action, the burden returns to Plaintiff to show that the reasons offered were in fact a pretext for discrimination. *Burdine*, 450 U.S. at 253. Plaintiff may prove pretext by showing that "a discriminatory reason more likely motivated the employer" or that "the employer's proffered explanation is unworthy of credence." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008). Usually, a plaintiff will demonstrate pretext by showing that the proffered reason: (1) had no basis in fact; (2) was not the actual reason for the employer's decision; or (3) was insufficient to explain the employer's decision. *Id.* at 393 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). As the court explained in *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 472 (6th Cir. 2002), the first and third types are direct attacks on the employer's credibility. With the second type, the plaintiff argues that the "sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer*, 29 F.3d at 1084.

In their Motion for Summary Judgment, Defendants concede that Plaintiff is a member of a protected class (both by virtue of her race and gender), and they do not contest Plaintiff's

disability.  (*Defendants' Motion*, Doc. 41 at 10).  Defendants also do not challenge that Plaintiff was otherwise qualified to work as a home solicitor.  (*Id.*).

Defendants dispute, however, the other elements of Plaintiff's *prima facie* case.  In particular, Defendants assert that Plaintiff never suffered an adverse employment action, because she was in fact hired to work as a home solicitor.  (*Id.* at 11).  They further argue that Plaintiff has offered no evidence that other individuals who were not members of the protected class were offered the position.  (*Id.* at 11).  Rather, they point to the fact that Defendants employed "at least fifteen individuals who identified themselves as disabled" as home solicitors, as well as several black and/or female home solicitors.  (*Id.* at 11-12).

In addition, Defendants argue that, even if Plaintiff has made her *prima facie* case, they have articulated a legitimate basis for Plaintiff's failure to begin work – that is, Defendants' own error in improperly routing Plaintiff's Form I-9 to its Human Resources Department instead of sending it first to Ms. Tewell.  (*Id.* at 12).  Defendants admit their mistake, but insist that Title VII and the ADA do not require a company to be error free; only that it not make decisions for discriminatory reasons.  (*Id.* at 13).  In short, Defendants maintain that their mistake "was a legitimate one, not a sinister one," and this oversight constitutes "a specific, non-discriminatory reason for the Company's failure to provide work to Plaintiff."  (*Id.* at 14).

Lastly, Defendants argue that Plaintiff cannot refute the articulated reason as pretextual.  Defendants claim that Plaintiff cannot show that the reason given is false, and that her personal opinion as to what took place does not substantiate a claim of discrimination.  (*Id.* at 14-15).  Suspicion, Defendants conclude, "do[es] not constitute evidence of pretext."  (*Id.* at 15).

Plaintiff argues that although she was offered a job via telephone and email, once she appeared in person, "the hiring process stopped" and she was "dropped," because she is "a 58

11

year old black female with disabilities." (*Plaintiff's Motion*, Doc. 42 at 4). She adds that she has "no direct evidence of whoever was hired instead, because Faye Tewell stated that the position was still open" when Plaintiff last communicated with her. (*Plaintiff's Response*, Doc. 45 at 9).

Plaintiff's argument relies heavily on *Cones v. Shalala*, 199 F.3d 512 (D.C. Cir. 2000). In particular, Plaintiff quotes *Cones* extensively in order to argue that the function of the *prima facie* case is

> limited to eliminating the two most common nondiscriminatory reasons for a plaintiff's rejection: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for the refusal to hire, the Supreme Court has explained, is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.

199 F.3d at 516 (quotation omitted) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)).

Thus, Plaintiff argues that, since Defendants admit she was qualified, and since the job was vacant when Plaintiff applied, she has cleared the hurdle presented by the *prima facie* case and created an inference of discriminatory decision-making. (Doc. 42 at 7). She further relies on *Cones* for the proposition that the "close temporal proximity" between Defendants' knowledge of her racial and disability status, and the adverse hiring decision, suffices to establish a causal connection. (*Id.* at 8) (quoting *Cones*, 199 F.3d at 521).

Plaintiff also makes reference to an "informal consumer complaint" she filed against Ohio Thrift Stores in 2004. (*Id.* at 9). Plaintiff admits that "Defendants brought attention to [this complaint]" during Plaintiff's deposition, before which, according to Plaintiff, she "forgot all about [it]." (*Plaintiff's Dep.* at 189). Plaintiff describes how, in 2004, while shopping at Ohio Thrift, she was accused of altering the price of an item at the store, resulting in shouting and an altercation, and ending in her paying 92 cents more for the item in order to avoid being accused

12

of theft.  (Doc. 42 at 9-10).  As a result of this incident, Plaintiff filed a consumer complaint with the Ohio Attorney General, but did not contact the OCRC.  (*Id.* at 10).  In her deposition, Plaintiff was reminded of this incident, and stated that "I'm wondering if this is what caused me not to get hired."  (*Plaintiff's Dep.* at 189-90).[2]

Finally, Plaintiff disputes the evidence relied on by Defendants.  She argues that any new employees hired between 2010 and 2013 were hired "to amend the accusations, [so that] the Defendants can conveniently say that the 'black candidates' matched Plaintiffs' membership of a protected class."  (*Plaintiff's Response*, Doc. 45 at 3).  Plaintiff further charges that the affidavits relied on by defendants are "baseless," "orchestrated," "rehearsed," "unreliably dishonest," and "irrelevant."  (*Id.*).  She insists that Defendants' questions at her deposition "were set up to make Plaintiff lie and say what the Defendants wanted to hear."  (*Id.* at 9).

### A.  Race Discrimination *Prima Facie* Case

Plaintiff has failed to establish a *prima facie* case of race discrimination.  Most importantly, Plaintiff cannot state a cause of action because she suffered no adverse employment action; she *was*, in fact, hired to work as a home solicitor.  Indeed, even after she was hired by Mr. Tewell, but was not given any work, and filed an OCRC complaint against Defendants, she was again offered employment as a home solicitor.  (*Alinkas Aff.*, ¶ 14; *Plaintiff's Dep.* at 209-10).  Although Plaintiff might have felt that she was not "really wanted" (*Plaintiff's Dep.* at 210), and therefore ought to decline the offer, that does not change the fact that she was not the subject of an adverse action giving rise to a claim for racial discrimination under Title VII.  No reasonable jury could conclude otherwise.  *Compare Nguyen*, 229 F.3d at 564 (no *prima facie*

---

[2] In her Response to Defendant's Motion, however, Plaintiff maintained that the consumer complaint was "irrelevant."  (Doc. 45 at 3).

case when plaintiff failed actually to apply for the position sought); *Harrington v. Boysville of Michigan, Inc.*, No. 97-1862, 145 F.3d 1331, at *3 (6th Cir. May 13, 1998) (per curiam) (Plaintiff failed to establish *prima facie* case because she "was actually hired" by the defendant, when she was hired at a different location, which subsequently closed, and she was offered a transfer to the location she originally applied for, which she accepted).

Plaintiff has also failed to establish her *prima facie* case under Title VII with regard to whether "other employees of similar qualifications who were not members of the protected class were offered the position." *Hubbard*, 2009 WL 5171825 at *5. Plaintiff admits that she has no "direct evidence" of whomever was hired as a home solicitor, but claims that any new employees hired since her OCRC complaint are merely "convenient[]" attempts to cover-up what Defendants did to her. (Doc. 45 at 3, 9).

Because Plaintiff has offered no evidence addressing this element, she has failed to make her *prima facie* case. Even following the Sixth Circuit's most general formulation of this element, Plaintiff has done nothing to demonstrate that a "comparable non-protected person was treated better." *Adams v. Proto Plastics, Inc.*, 151 F. App'x 468, 470 (6th Cir. 2005) (citation omitted); *compare Lyons v. Metro. Gov't of Nashville & Davidson Cnty.*, 416 F. App'x 483, 489 (6th Cir. 2011) (affirming summary judgment where plaintiff "d[id] not identify any similarly-situated employee who was treated more favorably."); *see also Johannes v. Monday Cmty. Corr. Inst.*, 434 F. Supp. 2d 509, 517 (S.D. Ohio 2006) (same).

Plaintiff's allegations that Defendant hired other black and/or female employees simply to defeat her lawsuit are baseless; even if Plaintiff presented any evidence that this was the case, such evidence would only serve to undo the claim that Defendants acted with discriminatory

14

intent. In addition, Defendants have offered undisputed testimony that, in fact, they have hired several home solicitors who are members of Plaintiff's protected class. (*Alinkas Aff.*, ¶¶ 7-8).

Accordingly, there is no genuine dispute of material fact regarding Plaintiff's *prima facie* case under Title VII, and summary judgment for Defendants is warranted.

### B. Disability Discrimination *Prima Facie* Case

Plaintiff has also failed to establish a *prima facie* case of disability discrimination. Although Defendants do not challenge that Plaintiff is "disabled" within the meaning of the ADA, and that she was qualified for the job, Plaintiff's *prima facie* case is deficient for the same reasons as described above. Plaintiff *was hired* to work as a home solicitor, both by Ms. Tewell, and against after she filed her OCRC complaint. Moreover, Plaintiff has offered no evidence that "the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield*, 639 F.3d at 259. Defendants employ various disabled individuals as home solicitors (*Alinkas Aff.*, ¶¶ 7-8), and Plaintiff can show no evidence that demonstrates that the position was kept open while the employer "sought other applicants" outside of the protected class. Furthermore, any specter of discriminatory animus is dispelled by the fact that Ms. Tewell was aware of Plaintiff's disability from the very start of their communications, and still offered Plaintiff employment. (*See Plaintiff's Dep.* at 114, 124, 138).

There is no genuine dispute of material fact, therefore, regarding Plaintiff's *prima facie* case under the ADA, and summary judgment for Defendants is warranted.

### C. Legitimate, Non-discriminatory Reason

Even if Plaintiff had succeeded in stating a *prima facie* case under Title VII or the ADA, Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's failure to begin work – that is, "its own error in initially routing the Form I-9 to Human Resources instead

15

of Ms. Tewell." (Doc. 41 at 10). As Defendants rightly note, federal employment law does not require that employers never make mistakes. Rather, employers may make employment decisions "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Brown v. Renter's Choice, Inc.*, 55 F. Supp. 2d 788, 795 (N.D. Ohio 1999) (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)). Courts "do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 599 (6th Cir. 2007) (quotation omitted). *Compare Buchholz v. Rockwell Int'l Corp.*, 120 F.3d 146, 150 (8th Cir. 1997) (employer articulated legitimate, non-discriminatory grounds for failure to hire when "the supervisors to whom [the plaintiff's] resume was routed testified that they did not remember ever receiving his resume and therefore did not consider him for [the position]."). In addition, Plaintiff's own error in failing to inform Ms. Rauch that the Form I-9 needed to be sent to Ms. Tewell (*Plaintiff's Dep.* at 148), and her mistake in stating to Ms. Tewell that she gave the I-9 to Ms. Noeth (*Id.* at 160), also contribute to Defendants' non-discriminatory reason for its failure to give Plaintiff work. *See Rapp v. Gen. Motors Corp.*, 148 F. Supp. 2d 924, 931 (N.D. Ohio 2001) *aff'd*, 59 F. App'x 724 (6th Cir. 2003) (plaintiff's failure "to comply with the formal application procedures" meant that she could not establish that she applied for the position in question, and therefore could not establish her *prima facie* case).

Accordingly, Defendants have succeeded in carrying their burden at this step.

### D. Evidence of Pretext

Finally, Plaintiff has failed to offer any evidence rebutting Defendants' explanation and demonstrating pretextual motives. Plaintiff attacks the affidavits as false and rehearsed, but gives no evidence that they are inaccurate. Plaintiff denies the relevance of her deposition, on

16

the grounds that she was tricked into answering questions the way Defendants desired, but a review of her testimony belies this claim. Plaintiff has had ample opportunity to explain herself through her numerous filings, and she has failed to offer any admissible evidence that demonstrates that Defendants did not simply make a mistake in processing Plaintiff's paperwork. *See Hartsel v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996) ("reasonable difference[s] of opinion" and "bald assertions and conclusory statements" are not enough to provide proof of discriminatory animus).

Defendant looks to several cases for support for her argument that she has succeeded in carrying the minimal burden required under the *McDonnell Douglas* framework. Even if *Cones* were binding precedent in this circuit, however, Defendants have in fact offered "other explanation" for their failure to schedule Plaintiff to begin work. Plaintiff may be correct that "when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not that the employer . . . based his decision on an impermissible consideration such as race." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). But Defendants have offered a "legitimate reason" for not providing Plaintiff with work, and Plaintiff has offered no evidence, beyond her own opinion, to cast doubt on that reason.

An offered reason for the adverse employment action "cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002). "It is not enough, in other words, to *dis*believe the employer; the factfinder must *believe* the plaintiffs explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 519 (emphasis in original).

The only evidence Plaintiff presents in support of pretext is the "informal consumer complaint" she filed against Ohio Thrift Stores in 2004. (Doc. 42 at 9). While Plaintiff admitted in her deposition that she learned about this complaint only when it was mentioned to her by Defendants, after the filing of her suit (*Plaintiff's Dep.* at 189), and although she continues to refer to it as "irrelevant" (Doc. 45 at 3), nevertheless she suggests that the complaint may be connected to her failure to begin work. This is not enough. Plaintiff offers no evidence to show that any decision-maker knew of the incident, and indeed the affidavits offered by Defendants show that Ms. Tewell, Ms. Noeth, and Ms. Rausch were wholly unaware of its existence. (Doc. 41-3, ¶ 10); *compare Marwaha v. SBC Global Servs., Inc.*, 05-CV-2015, 2006 WL 2882854, at *14 (N.D. Ohio Oct. 6, 2006) (in retaliation claim, where "the decision maker is unaware of the complaint, a plaintiff has not made his prima facie case."); *Seay v. Tennessee Valley Auth.*, 340 F. Supp. 2d 832, 841 (E.D. Tenn. 2004) (where decision-makers "were entirely unaware" of the plaintiff's race, "it would be impossible for [the adverse employment decision] to have been motivated by intentional race discrimination."). In short, Plaintiff's collection of "rumors, conclusory allegations and subjective beliefs" are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell*, 964 F.2d at 585.

Thus, Plaintiff has failed to demonstrate that Defendants' proffered non-discriminatory reason for its actions is a pretext for discrimination.

## VI. PLAINTIFF'S MOTION TO STRIKE

Lastly, Plaintiff filed a lengthy Motion to Strike Defendants' Reply in support of their Motion for Summary Judgment (Doc. 47). Plaintiff argues that the affidavits supporting the brief are "made in bad faith," and display "rehearsed, repeated, orchestrated, unreliably honest testimonies." (*Id.* at 1). Plaintiff also objects to the fact that Defendant's Motion for Summary

18

Judgment contained only portions of her deposition transcript (*see* Doc. 41), despite the fact that the entire deposition transcript was separately filed with the Court (*see* Doc. 40). Plaintiff generally expresses her disbelief at the various affidavits offered by Defendants.

This motion is without merit. Plaintiff merely repeats her claims that Defendants' offered affidavits are false and misleading, without any evidence to support her argument.

Plaintiff's Motion is hereby **DENIED**.

## VII. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**. Plaintiff's Motion for Summary Judgment (Doc. 42) is **DENIED**. Plaintiff's Motion to Strike (Doc. 47) is **DENIED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                   s/ Algenon L. Marbley
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED: February 21, 2014**